Roane J.
This is a bill praying for the specific execution of an agreement, whereby, the agent of the appellee contracted to sell to the appellant a tract of land, for the consideration in the bill mentioned. The appellant alleges this contract to have been made on the 18th of March, 1780 ; but as the memorandum then given, and on which he seems to rely, is consistent with the declaration of Coleman, the agent, in his answer that the contract was really made in the November, or December preceding ; and as Barkesdale, á witness in the cause, states his belief, that this land was sold prior to the year 1780; I shall consider this contract as reallv made in one of the said months of November or December; and as Coleman, the agent of the appellee, admits it might have been in the month of December, (which admission is to be taken most strongly against the party who makes it,) I shall lx upon the month of December 1779, as the time of *126 the contract. This contract was a general one, by which the agent of the appellee, agreed to sell the land in question to the appellant, for 6/. current money per acre : whereof two thirds was to be paid in the months of May, or June following, when a deed was also to be executed, and for the balance the appellant was to have a longer credit. .The appellant did not punctually pay the money according to his undertaking; and although he afterwards shewed a willingness to do so, it was refused by the appellee, because of its depreciation. The appellee also refused to give a conveyance of the land, unless the appellant would make such a settlement and payment, as would be satisfactory to his agent, Coleman. Thus matters rested until after the abolition of paper money, when White exhibited his bill.
This cáse is not, as I conceive, distinguishable from the common one of a bill for the execution of an agreement, after a failure of payment on the part of the purchaser, except so far as a distinction may arise from the situation of this country at the time of the transaction, in respect to its circulating medium. I will therefore consider this case first, as independent of that circumstance : and secondly, as affected by it.
It will not, I presume, be denied, but that in the case of a general agreement, made in times when the currency is permanent, and unattended by any peculiar circumstances, a Court of Equity would decree a conveyance, upon payment of the principal money contracted for, and legal interest. It would make such principal money the measure of that which the purchaser is to pay, on one of two grounds; first, as being a fulfilment of the very agreement made on the part of the vendee, and consented to by the vendor. Or, secondly, if it should be proper, on the ground of there having been a forfeiture, to consider what is a just compensation, it could fix upon no criterion, whereby to estimate this compensation, so proper as' the contract of the parties themselves.
There is no doubt, but that if the real value of the property sold is to be regarded, it ought to be ascer *127 tamed as at the time of the contract 9 and the opinion of both parties as to such value, at that tlmes ought be conclusive upon both-
That is however the case of a contract in currency of a fixed value, and for the non-payment at the time it became doe, the law has settled the equivalent, namely, five per centum per annum„ But the case now under consideration is that of a contract made in a depreciated and depreciating currency. We will therefore consider how it is affected by that circumstance. I very readily admit, that where a party against whom a bill is brought For the specific execution of an agreement, shews that such would be unconscionable, and prays that it may not be decreed but upon such terms as are just, a Court of Equity may impose such terms upon the plaintiff, and if he will not submit to them, may dismiss his bill. Bat to decide w hat are, and what are not such equitable terms as the Court ought to impose, will depend upon the circumstances of every case, and upon the exercise of a sound discretion by the Court. I say of a sound discretion, because it ought not io be an arbitrary one, and in particular, it should respect the laws of the country, and so far as may bes the agreement of the parties themselves- The Act of 178i, — establishing a scale of depreciation, and declaring that out-standing current money contracts should be regulated by such scale, as at the date of such contracts,- — appears to me, in effect, to have converted such current money contracts into specie contracts; for it declares that such shall now be discharged by as much specie, as shall appear, by the application of the scale, to have been then, {viz. at the date of such contracts,) the value of the current money- In the case of specie contracts generally, (as is above supposed,) upon payment of the sum contracted for, and interest, a specific execution would be decreed- But the case is not different in substance, where the contract was for paper money ; the value of that paper money, and not the numerical sum, is what the vendee is boned to pay, and the vendor entitled to receive- If the scale *128 forms a just rule for ascertaining the value of paper money in specie, by the application of it to the current money contract of the parties, we can find the value in specie of that which was contracted to be paid, not less truly, than if the contract had been for specie itself. And the seller can no more complain of receiving such a sum with interest, as being less than he contracted to receive, than he could complain of receiving principal and interest in case of a specie contract. The Legislature have established this scale as a just rule, whereby to settle paper money contracts in specie. It was no doubt made after due de liberation, and upon good information. It has been generally acquiesced in by the people of this Commonwealth, and has prevented much litigation. It affords, I suppose, the best rule for ascertaining the value of the paper money, having been made by those who represented every part of the State and had the best opportunity of judging. The opinion of the Court of Appeals in the case of Hill v. Southerland’s Executors, [ante vol. i. p. 128,) does not preclude me from considering this scale as affording a just rule for estimating the value of paper money, as it respects the year posterior to 1778. Perhaps, that case impliedly admits the scale to afford a just rule, except as to the year 1777, and 1778. At any rate, I have no data whereby I am justified in saying that as to the contract in question, the scale does not afford a just rule. But the appellee alleges, that he had immediate use for the money, and that he sustained an injury by the want of punctuality in the payment. If he had shewn to the Court the amount and particulars of the injury, and moreover, that he had apprised the appellant that his situation was so peculiar as to render punctuality in the payment important to him, I will not say, but a Court of Equity would lay hold of those circumstances to vary the decision, which I think ought now to be given. But it seems to me. that without such data, we ought not to go into the consideration, how far the seller may have sustained % loss by the non payment of the money when due *129 Neither ought the purchaser to be affected by a loss resulting to the seller on account of any peculiarity in his situation, when such situation was not made known to him.
In fact the pretension which I am now considering, would as well apply to a specie, as to a paper money contract5 with this additional circumstance attending the latter, that the money if paid, might have been refused by the appellee’s creditor, and in that event, or if he were not himself a debtor, it might, and probably would have died in his hands by the abolition of that currency, I might here add, that such was the peculiar situation of this country, during the existence of paper money, that many, if not most creditors, were ruined by a punctual performance of contracts made on credit 5 whereas it was by the virtuous and honorable conduct of some debtors, in withholding payments, that many creditors were sheltered from destruction.
The fifth section of the Act of 1781, establishing a scale of depreciation, gives to the Court a power to depart from such scale, where circumstances shall arise, which, in their opinion,, would render a determination according to it unjust. Such a power I have already admitted, is exercisable by a Court of Equity, upon an application like the present, independent of this section, where the circumstances will justify it. What those circumstances are, which are contemplated in this section, I will not undertake to say 5 but it would seem to me, that they must be such as are peculiar to that very case, and not such as are common to every case. The one now under consideration appears to exhibit no circumstances which may not reasonably be supposed to attend every paper money contract, which was not punctually complied with. But it Is said, that the Court ought in this case to depart from the scale, because otherwise the appellee will not get the value of his land. The counsel For the appellee candidly acknowledged that he did not place his hopes of setting aside the contract in the present case, upon the Inequality of the sum produced *130 by the scale, compared with the real value of the land. Indeed a contrary doctrine would involve the Court in a difficulty where to draw' the line, if every (even ^e minutest) inequality, should not be deemed sufficient to justify a departure from the scale; but before we can say that a given sum is unequal to the value of the subject, that value itself must be ascertained»
In the present case the value of the land, at the time of the contract is not ascertained, otherwise than by the original contract of the parties. There are two witnesses who say they think the land was worth fifty pounds of tobacco per acre; but what was the value of the tobacco in specie at that time, or whether these witnesses are credible, this Court cannot undertake to say. A jury has also said the land was worth six shillings per acre. But the time to which their valuation has reference, was six months posterior to the time of the contract, within which period the land might, for any thing known to the Court, have considerably risen in value.
Upon the whole, as by the application of the scale of depreciation, (which in this instance is presumed to afford a just as well as a legal rule of liquidation,) to the current money contract of the parties, we can precisely ascertain the value in specie which was contracted to be given for the land, at the time the purchase was made, such application ought to have formed the criterion by w'hich the Chancellor should have estimated the compensation to be paid by the appellant ,• and by this rule, the appellee will receive more in value than he would, if the money had been punctually paid, in consequence of its progressive and rapid depreciation.
I am of opinion therefore, that the decree should be reversed, and modelled as to the compensation, according to the ideas above stated.
Fleming J. — It is a rule at Law, that the breach of one covenant cannot be pleaded in bar to another. The appellant might have brought his action at Law. and if he had, he must have proved performance on *131 his part Instead of resorting to a Court of Law, he has applied to a Court of Chancery for equitable relief, and therefore he must submit to the rules of the Court, which require him to do equity. This is certainly very different from common cases. The agreement was made at a time when money was much depreciated, and was every day still farther depreciating» This condition of the circulating currency was known to both parties, and therefore punctuality was more necessary than it would have been, if the value of the money had been stationary. Since therefore the appellant made the first breach in the contract, which operated to the injury of the other party, he is not entitled to the relief he asks for, but upon the terms of his doing equity- and this consists in his paying the real value of the land at the time of the contract. This was properly preferred by the Chan teller to a dismission of the bill, since the appellant had paid pari of the money, and very probably had made some improvements. I am for affirming the decree.
Carrington, J. — When this cause was first brought on, I was struck with the impropriety of interfering with the contracts of parties. But upon fuller consideration of the circumstances of this cause, I think that justice cannot otherwise be done. The real value of paper money was very little known to any person. There were few who were not deceived by it. A want of punctuality never failed to produce a loss, and the longer payment was delayed, the more the loss was accumulated. The parties in this case certainly had depreciation in view, and Atkinson may have calculated upon the use of the money, if punctually paid at the time agreed upon. Beyond that time no calculation could have been made. As to the payment of the money, it ought to have preceded the conveyance, and it is evident that White himself thought so from his conduct. Yet it does not appear that he tendered the money, or had it to pay. It is dear that White forfeited all his rights under the contract at Law, and then the question is. in what situation *132 does he stand in a Court of Equity. The Chancellor„ instead of dismissing the plaintiff’s bill, more properly decreed a conveyance upon the equitable terms of his making compensation; the standard of which compensation he very rightly considered to be the value of the land, as ascertained by a jury. I am of opinion that the period to which the valuation should have related ought to have been that when the contract was made, and not that when the first payment was to be made,. The difference in this case is not important; but if either party requests an issue to try the value at the date of the agreement, I have no objection to indulging him. As to the danger of a precedent like this, I think that all such cases must depend upon their particular circumstances, and that the opinion now given, will not apply but in a case precisely like the present.
Lyons J. — The general rule in executory contracts respecting personal things is, that if the purchaser does not pay and take away the property in convenient time, the seller is not bound, and may dispose of it again. If earnest be given, the vendor must request payment of the consideration; after which he is absolved from the bargain if it be not paid. In cases of sales of real property, the rule of Equity is, that though a forfeiture take place at Law, by a failure on either side, yet if it be a case lying in compensation, a Court of Chancery will relieve against it. But if that Court do interfere, it must be in cases perfectly fair, equal and just. Another rule in a Court of Equity is, that he who would receive the benefit must sustain the loss. Here then occurs the difficulty of the case. The Legislature have established a scale by which to ascertain the sum in specie which should be paid in discharge of contracts entered into at particular periods, whilst paper money was in circulation. This law was very properly passed; for otherwise the value in each particular case must have been ascertained by a jury, in the same manner as in actions for foreign money. This would have produced infinite trouble *133 and litigation, which this law (affording I believe the best general rule) is wisely calculated to prevent. It is of more consequence that the law should be fixed and known than that It should always be strictly just. The debtor Is to pay according to the scale at the date of the contract, because, as the payment was not punctually made, lay which the debtor had the benefit of the money, and deprived the creditor of the use of it, the debtor ought to bear the loss by depreciation. This rule would have been enforced. If the creditor had brought his suit to coerce payment. This furnished an equitable course of reasoning with the Chancellor to depart from the scale, when he was applied to for equity. On the other hand. If the creditor refuse the money when tendered, or if there be other circumstances to warrant a departure from the scale, it may be made; in no other case can a smaller sum be allowed; in none more.
The scale is binding where the creditor sues. But where the debtor applies for equity, the rules which govern Courts of Equity may properly be applied to him. The case of Wilson M'Rae v. Keeling, (ante, vol. i. p. 194,) went upon the principle, that he who would have sustained the loss, shall have the benefit. So here, if the money had been paid, a specie debt might have been discharged with It, or it might have been applied to other valuable uses. I agree, that the time when the contract roas made» was the proper period for fixing the valuation of the land, and that in this respect the Chancellor was wrong.
The President. — To view this case as a gene ral one, unaffected by the particular circumstance? which attend it, the appellant has wholly failed in performing his part of the agreement. It does not appear that he was ready to do so during the whole year. If White had brought his action at Law, he could not have succeeded, without averring and proving performance on his part, or that he was ready to perform. The agreement therefore was entirely forfeited at Law, *134 and how does it stand in a Court of Equity? The appellant has paid part of the purchase money, and has perhaps made improvements upon the land. This being a case where compensation can be made, a Court of Chancery will relieve; — but upon what terms? If the contract had been made in specie, the value fixed by the parties would have furnished the just measure of retribution. But even in cases of specie contracts, I will not say that this measure would in all cases be resorted to. Suppose a man sells at half price upon condition of punctual payment, calculating upon an ability which he might thence derive of making a beneficial investiture of the money. Suppose it should appear that he had lost this advantage by want of punctuality. The Court I think would properly depart from this rule, and might refuse to relieve, but upon payment of the full value of the land. However this might be, it is certain, that in a case of a contract made in paper money, where the scale furnishes no just rule for fixing the value of the money, the rule above mentioned ought to be departed from. No juror can say what were the ideas of the parties as to the value of the money at the time of the agreement.
The Act of 1781 furnishes a good general rule for scaling paper-money contracts; perhaps the best which could have been made. But it is certainly not just in all cases. What is the objection to the measure of compensation adopted by the Chancellor ? Because the appellant had got an advantageous bargain, it is supposed hard to deprive him of it. But why is he deprived of it? Why did he not perform those acts which entitled him to retain the advantage? This Court does not deprive him of it; he has been himself the cause of its being lost.
I agree with the other Judges, that the period to be fixed for ascertaining the value of the land was that, at which the contract was entered into. The difference in specie is not considerable; but if either party wishes an inquiry s(at his own expense) according to this opinion, he may be gratified.
*135 The opinion and decree, as entered, is as follows s viz.
" That there is no error in the principle of the said decree, so far as it subjects the appellant to the payment of the specie value of the land, as a condition upon which the land is to be conveyed to him; and although the value at the time of the contract should have been enquired of, instead of the value at the day of payment, yet as the difference is probably trivial, and not equal to the expense and trouble which would be incurred by a new trial of the issue for that purpose, the verdict of the jury ought to stand as the valuation, unless either party shall choose, at his own expense, to have such new inquiry made, in which case, a new issue ought to be made up, and tried by a jury, to ascertain what was the specie value of the land at the time of the contract; and that there is error in the decree in this, that the appellant is decreed at all events to pay the money, and take a conveyance of the land, instead of allowing him the option of abandoning his claim, and losing the money he has paid» Therefore it is decreed and ordered, that the said decree be reversed and annulled, and that the appellant pay to the appellee, Roger Atkinson, as the party substantially prevailing in this Court, his costs by him about his defence in this behalf expended. And this Court proceeding to make such decree as the said High Court of Chancery should have pronounced, is of opinion, that the appellant having failed to perform on his part the agreement sought to be carried into execution, had forfeited all claim to the aid of this Court for that purpose; but having paid part of the purchase money, and probably made improvements on the land, he ought to be relieved against that forfeiture, upon making the appellee, Roger Atkinson, just compensation, the rule of which ought to be, the value of the land at the time of the contract; and although that value usually is, and ought to be, in such cases, considered as fixed by the contract when specie of stable value is the medium of payment, yet in this case, where that medium was to be in paper depreciated, and ra *136 pidly depreciating at the time, the contract affords no just rule for ascertaining the specie value of the land, which was therefore properly enquired of and settled by the verdict of a jury, and ought to stand as the rule of compensation; therefore, it is further decreed and ordered, that upon the appellant’s paying or tendering to the appellee Roger Atkinson, within three months from the time of his being served with a copy of the final decree in the High Court of Chancery, the sum of one hundred and twenty-eight pounds, two shillings, with interest thereon at the rate of five per centum per annum from the last day of June 1780, till payment, and the costs of this suit, the said appellee shall execute a - good and sufficient deed or deeds for conveying to the appellant the land in the proceedings mentioned, in fee simple, with a general warranty; but ii the appellant shall fail to make such payment, or ten der, within the time aforesaid, that his bill in that case shall stand dismissed with costs. But if either party shall, upon this decree being certified to the High Court of Chancery, apply to that Court, and desire a new inquiry to be made by a jury, at his expense, what was the specie value of the land on the last day of December, 1779, an issue shall be made up, and directed to be tried by a jury, to ascertain such value, at that period; which being tried and certified to the satisfaction of the said High Court of Chancery, shall stand as the rule of compensation, instead of the former valuation, and with the interest thereon from the said last day of December, 1779, after deducting the. eighteen pounds paid, be paid or tendered to the appellee Roger Atkinson, within such reasonable time as shall then be allowed by the said Court, to entitle him to the conveyance in the above decree mentioned, or subject him to the consequence therein stated in case of his default.”([1])

(1) Taliaferro v. Minor, 1 Call. 524. 532„